# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| INTERMARK, INC., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No. 16-1311-CV-W-BP |
| | ) |
| J&K WALDIE, LLC., | ) |
| | ) |
| Defendant. | ) |

## ORDER AND OPINION DENYING
## PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT

Plaintiff initiated this suit in state court, alleging a single claim for breach of contract. Defendant removed the case to federal court. The parties mediated their dispute and during the mediation they signed an agreement that resolves their dispute. Now pending is Plaintiff's Motion to Enforce Settlement Agreement. (Doc. 28.) After considering the parties' arguments, the Court denies Plaintiff's motion.

## I. BACKGROUND

The agreement executed during the mediation, (Doc. 29-1; Doc. 30-1), provided that Defendant would pay Plaintiff a total of $175,000, and that the parties would exchange mutual releases. In addition, the agreement provides that "Plaintiff agrees to satisfy all liens." During the mediation, it was known that Plaintiff owed the IRS back taxes of approximately $475,000. Plaintiff concedes that when it filed for Chapter 11 bankruptcy in 2013 it "had some outstanding tax debt," (Doc. 29, p. 6), and the Record includes the Proof of Claim filed by the IRS. (Doc. 30-3.) The bankruptcy was dismissed without a reorganization plan being approved or any of Plaintiff's debts being discharged.

The day after the mediation, Defendant (through counsel) contacted Plaintiff (again, through counsel) and asked "How do you want to handle the liens against [Plaintiff]? Because of the bankruptcy, we have notice of creditor claims, although I am not sure [Plaintiff's principal]

has been served any lien notices." (Doc. 31-1, p. 9.) The parties then discussed (1) whether there were any liens and (2) how to resolve the issue. For instance, on December 6, Defendant's counsel expressed concern "that the IRS lien is a 'silent lien' meaning a third party who pays amounts due a debtor, particularly an insolvent debtor like [Plaintiff], instead of the IRS is liable for the amounts paid . . . ." (Doc. 31-1.) Plaintiff continued to dispute the existence of a lien, and Defendant continued to propose ways to alleviate its concern that it not be liable to the IRS if it paid the settlement funds to Plaintiff. Some of Defendant's proposals included (1) obtaining lien waivers from the IRS confirming that there are not liens, (2) placing the settlement proceeds in trust until the debt was resolved, or (3) requiring Plaintiff to resolve all tax debts before receiving payment. Plaintiff found these proposals, and all others from Defendant, unacceptable and favored having Defendant simply pay the proceeds to Plaintiff. In late December, Defendant mailed requests for lien waivers to the IRS (and, possibly, other taxing authorities), but to date has not received a response. (Doc. 30, p. 3 n.4.)

Plaintiff contends that Defendant's proposals are inconsistent with the agreement reached at the mediation, and seek an order that, *inter alia*, requires Defendant to "execute a settlement in accordance with the terms of the mediation agreement . . . ." (Doc. 29, p. 10.) Defendant counters that it is Plaintiff that seeks a final agreement that is inconsistent with the terms established at the mediation. The Court resolves these arguments below.

## II. DISCUSSION

District courts have the inherent authority to enforce agreements that settle or resolve cases currently pending before the court. *E.g., Harper Enterprises, Inc. v. Aprilia World Service USA, Inc.,* 270 Fed. App'x 458, 460 (8th Cir. 2008). A settlement agreement is a contract, *see, e.g., Myers v. Richland County,* 429 F.3d 740, 745 (8th Cir. 2005), and when considering a settlement agreement the Court's objective (as is the case with any contract) is to give effect to

2

the parties' intent. *E.g., Cromeans v. Morgan Keegan & Co.,* 859 F.3d 558, 566 (8th Cir. 2017). If possible, the contract should be interpreted in a manner that gives meaning to all of its terms. *E.g., Portell v. AmeriCold Logistics, LLC,* 571 F.3d 822, 824 (8th Cir. 2009).

Plaintiff argues that Defendant's various proposals for demonstrating that there are no liens (or that any liens that exist have been satisfied) violate the parties' agreement because the parties did not specifically agree when or how the liens were to be satisfied. It thus proposes a settlement agreement that merely states that Plaintiff is required to satisfy any liens that may exist on the settlement proceeds. (Doc. 31-4, p. 3.) The Court concludes that Plaintiff's argument – and its proposed Settlement and Mutual Release Agreement – does not effectuate the parties' intent as expressed in the agreement reached during the mediation.

The provision that Plaintiff "satisfy all liens" was clearly intended to allay Defendant's concerns about any liens that might exist on the money it paid to Plaintiff. Defendant understandably does not want to pay the $175,000 to Plaintiff, only to find out later that (1) the IRS (or some other taxing authority) had a lien on the money and (2) Plaintiff did not use the money to pay the tax debt secured by that lien. It makes no sense for Plaintiff to simply promise (as it proposes) to resolve any lien issues should they arise because such an agreement may prove to be unenforceable as to Plaintiff and therefore insufficient to protect Defendant's interest in insuring that it pays the $175,000 only once.[1]

Plaintiff is correct when it points out that the parties did not agree on any particular method for insuring that any liens are satisfied. However, this lack of specificity does not mean that Plaintiff is absolved of its obligation to provide Defendant with the assurance that it bargained for. Furthermore, the Court believes that several of Defendant's proposals – obtaining

---

[1] Defendant represents, (Doc. 30, p. 2), and Plaintiff does not deny, that Plaintiff is still insolvent. Thus, if there is a lien on the proceeds, and if Plaintiff breaches its obligation to satisfy liens by using the settlement proceeds for other purposes, Defendant may be unable to enforce Plaintiff's obligation to satisfy the lien and will thus be compelled to satisfy the tax lien itself.

3

lien waivers from the taxing authorities, placing the money in trust, etc. – accomplish this objective and are therefore consistent with the parties' intent.[2]

As noted earlier, Defendant has sought lien waivers from taxing authorities. The Court agrees with Defendant that "[i]f the waivers are returned the problem is solved." (Doc. 30, p. 3 n.4.) If the waivers are not returned, then the parties will know that the taxing authority believes that a lien exists – and Plaintiff must satisfy the lien. Thus, the Court agrees that judicial intervention is premature. Defendant's actions will, eventually, lead to a resolution. For present purposes, it is sufficient for the Court to announce its conclusion that Defendant is entitled to a meaningful assurance that (1) there are no tax liens or that (2) the funds it pays will be used to satisfy any tax liens, all to make sure that Defendant has to pay the settlement proceeds only once.

## III. CONCLUSION

Plaintiff's Motion to Enforce Settlement Agreement, (Doc. 28), is **DENIED.**

**IT IS SO ORDERED.**

DATE: January 29, 2018

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT

---

[2] Plaintiff argues that the IRS does not have a lien on the proceeds. (Doc. 29, pp. 7-8.) The Court declines to address this issue because any ruling by the Court would not be binding on the IRS, and therefore cannot provide the same degree of assurance that the parties agreed Defendant would be provided by having Plaintiff "satisfy all liens."